**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARIO SPAN,

    Petitioner,

vs.                                                                                             Case No. 3:07-cv-155-J-3JRK

WALTER A. MCNEIL, et al.,

    Respondents.

_____

**ORDER**[1]

**I. Status**

    Petitioner, an inmate of the Florida penal system who is represented by counsel, initiated this action by filing a Petition (Doc. #1) for writ of habeas corpus and Petitioner Span's Statement of the Case and Memorandum of Law in Support of Habeas Corpus Petition Under 28 U.S.C. § 2254 (hereinafter Petitioner's Memorandum). Petitioner challenges his state court (Duval County) conviction for one count of armed carjacking, one count of armed robbery, and the resulting revocation of probation imposed in a previous case. Petitioner contends that he was denied the effective assistance of counsel when counsel failed to raise and argue a dispositive illegal detention issue.

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

1

Respondents filed an Answer in Response to Order to Show Cause (Doc. #16) (hereinafter Response) and Exhibits to Response to Petition for Writ of Habeas Corpus (Doc. #17) (hereinafter Ex.). Petitioner did not elect to file a reply. Thus, this case is ripe for review.[2]

## II. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

---

[2] The state court procedural history is set forth in the Response. See Response at 1-4. Furthermore, Respondents concede that this action was timely filed. Id. at 4-5. Therefore, the Court will not summarize the state court procedural history.

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[3] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[4] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." Schriro, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state trial and appellate courts. Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

---

[3] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[4] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

3

# IV. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). To establish the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

> As to counsel's performance, "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby v. Van Hook, 558 U.S. ----, 130 S.Ct. 13, 17, 175 L.Ed.2d 255 (2009) (quotation marks omitted). Thus, to establish deficient performance, a defendant must show that his counsel's conduct fell "'below an objective standard of reasonableness' in light of 'prevailing professional norms'" at the time the representation took place. Id. at 16 (quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2064-65). In assessing the reasonableness of counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91, 104 S.Ct. at 2066.

Reed v. Sec'y, Fla. Dep't of Corr., No. 09-10059, 2010 WL 59934, at *19 (11th Cir. Jan. 11, 2010).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). See also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## V. Findings of Fact and Conclusions of Law

Petitioner contends that he was denied the effective assistance of counsel when counsel failed to file a motion to suppress based upon Petitioner's illegal detention. The following facts are pertinent in assessing this claim.

On March 18, 1999, in state case number 98-11198-CF-A (hereinafter the 1998 case), Petitioner was adjudicated guilty of one count of armed burglary with assault or battery and three counts of aggravated assault pursuant to his plea of guilty to these offenses. Ex. A at 18-26. He received a downward departure sentence of two years of probation. Id. at 24-26.

On October 29, 1999, in state case number 99-12109-CF-A (hereinafter the 1999 case), Petitioner was charged by information with one count of armed carjacking and one count of armed robbery. Id. at 63-64. A violation of probation affidavit was filed in the 1998 case, based in part on the conduct charged in 1999 case. Id. at 27-28.

On March 28, 2000, Petitioner's defense attorney, M. Everett George, filed a motion to suppress the pretrial and in-court identifications of the Petitioner in the 1999 case, in which he alleged that: (1) Petitioner was arrested without probable cause and the out-of-court identification was the product of an unlawful arrest, in violation of both the United States Constitution and the Florida Constitution; (2) the out-of-court identification of Petitioner was obtained in violation of Petitioner's right to counsel, in violation of the United States Constitution; (3) the out-of-court identification was obtained through unnecessary procedures which were impermissibly suggestive and created a substantial likelihood of mistaken identification, in violation of both the United States Constitution and the Florida Constitution; and (4) any in-court identification of Petitioner would "constitute 'fruit of the poisonous tree' in that it is the result of the impermissibly suggestive identification procedures and is accordingly tainted with the same constitutional objections stated above." Id. at 77-79.

The trial court held a hearing on the motion on April 7, 2000. Id. at 137-96. At this hearing, the prosecutor called Desmond L. Winkfield and Andrew Taylor, the victims of the carjacking and robbery. Id. at 142-83. Mr. George called Officer Pringle, one of the officers involved in the "show-up of the suspects" to the victims. Id. at 186. The majority of the testimony and all of the argument pertained to the alleged unreliability of the show-up identification procedure, where Mr. Winkfield and Mr. Taylor identified Petitioner as one of

6

the two perpetrators. Defense counsel did not present any evidence or argument in support of the contention made in the motion to suppress that Petitioner was arrested without probable cause and the out-of-court identification was the product of an unlawful arrest. The trial court denied the motion. Id. at 196.

The 1999 case proceeded to trial, where Petitioner was convicted as charged. Ex. B at 123-564.[5] Instead of conducting a formal violation of probation hearing in the 1998 case, "the court, defense and state agreed that the court could consider the evidence presented at trial in [the 1999 case] to determine whether there had been a violation of probation." Petitioner's Memorandum at 2-3; see also Response at 2. The trial court found that the evidence presented in the 1999 case was sufficient basis for revoking Petitioner's parole in the 1998 case.

Accordingly, Petitioner's sole ground for relief in this case is Mr. George was ineffective for failing to raise and argue in the 1999 case that the initial stop of Petitioner violated the Fourth Amendment because there were no articulable grounds to believe that Petitioner had committed an offense and, even if there had been an objective basis to stop Petitioner, there was no probable cause to arrest him. Petitioner contends that, had counsel done so, the identifications would have been suppressed, he would not have been convicted in the 1999 case, and his parole would not have been revoked in the 1998 case.

Petitioner raised these issues in grounds eight and nine of a motion for post-conviction relief filed pursuant to Fla. R. Crim. P. 3.850 (hereinafter 3.850 motion). Ex. H at

---

[5] The Court cites the page numbers imprinted on the upper right corner of each page of this exhibit. The Court notes that the page number on the first page of this exhibit is 123.

5, 25-26, 38, 58-59. After holding an evidentiary hearing, the trial court adjudicated the claims as follows:

> [T]he Defendant asserts that counsel, Everett George, rendered ineffective assistance by failing to file any motion to suppress. Specifically, Defendant contends counsel should have argued that law enforcement lacked a reasonable suspicion to stop him and counsel should have filed a Motion to Suppress this legally dispositive issue. Mr. George testified at the evidentiary hearing held on August 20, 2004, regarding this issue. Mr. George testified that he did in fact file a Motion to Suppress in [the 1999 case]. (Exhibit "I," page 10.) Mr. George testified that he tried to suppress the in-court identification as well as the out-of-court identification of the Defendant on the ground that the manner in which both were conducted were [sic] suggestive. (Exhibit "I," page 13.) Accordingly, contrary to the Defendant's assertion, Mr. George did in fact file a Motion to Suppress.
>
> As to the issue of reasonable suspicion, Mr. George testified that he reviewed the dispatch tape which included the description of the suspect and evaluated the strength of the stop. (Exhibit "I," page 14.) Based on his evaluation, Mr. George testified that he felt that the strongest argument for the motion to suppress was the suggestive nature of the identification. (Exhibit "I," page 14.) Mr. George testified that he felt the reasonableness of the stop was questionable, but felt it was an issue better argued at trial.[6] (Exhibit "I," pages 14-15.) On cross-examination, Mr. George testified that the motion to suppress did in fact raise the issue of lack of probable cause to arrest the Defendant, but stated he raises everything in the motion, but only argues his strongest points when arguing the motion to the judge. (Exhibit "I," pages 19-20.) Mr. George testified that he felt the suppression of the identifications was the strongest point. (Exhibit "I," pages 20-21.) This Court finds counsel made a tactical decision not to challenge the legality of the stop in the oral argument on the motion to suppress to the judge. Songer v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical

---

[6] A review of the trial transcript reveals that Mr. George did not argue the unreasonableness of the stop at trial. The defense at trial was that of mistaken identity.

8

> decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, this Court finds that the Defendant has failed to establish error or prejudice to his trial. Strickland, 466 U.S. 668.
>
> In ground nine, the Defendant asserts that but for counsel's ineffectiveness in ground eight, there would have been no violation of probation in [the 1998 case]. A stated above, this Court finds that Mr. George made a tactical decision not to challenge the legality of the stop in the oral argument on the motion to suppress to the judge. As such, the decision of Mr. George did not constitute ineffective assistance of counsel. Accordingly, this claim is without merit.

Ex. H at 79-81.

Upon Petitioner's appeal, the First District Court of Appeal affirmed the circuit court's order, without issuing a written opinion. Ex. L. Thus, there are qualifying decisions from both the state circuit and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, this Court finds this claim to be without merit for the following reasons. On January 27, 2000, Mr. George deposed Officer Shawn Pringle. See Deposition of Shawn Pringle (Doc. #19-2). The pertinent portion of Officer Pringle's deposition testimony is as follows. On October 3, 1999, Officer Pringle was on patrol when he heard a police radio broadcast, requesting officers to be on the lookout (hereinafter bolo) for a four-door, pink Acura, with a spoiler on the back and a license plate from Georgia. Id. at 8-10. The bolo

9

broadcast also stated that the driver was wearing a plaid shirt and tan pants. Id. at 20. The car had been involved in a carjacking and robbery. Id. at 10.

Officer Pringle located the pink Acura and noticed that the vehicle was occupied by two black males. Id. at 13-19. He followed the Acura into a parking lot for the Westminster apartment complex. Id. at 24-27. After the driver parked the pink Acura, both occupants of the car fled on foot. Id. at 27-28. Officer Pringle observed that the driver was wearing a plaid shirt and tan pants. Id. at 28. The driver ran in a southerly direction and then "went around [a] building and proceeded in a north eastern direction." Id. at 29.[7] At this point, Officer Pringle broadcast a description of the suspects and the direction in which they had fled. Id. at 31. He directed the other responding units to set up a perimeter around the area. Id.

Two suspects were located and brought back to Officer Pringle's location at the apartment parking lot. Id. at 33. Officer Pringle did not recall if he identified the suspects; however, he thought that he would have told the other officers that one of the suspects was wearing the clothes he had seen the driver wearing (the plaid shirt and tan pants). Id. at 33-34. The victims were transported to the parking lot and identified the two men who had been apprehended as the perpetrators. Id. at 35-36.

On March 23, 2000, Mr. George deposed Officer Scott Delano. See Deposition of Scott Delano (Doc. #19-3). The pertinent portion of Officer Delano's deposition testimony is as follows. On October 3, 1999, he "was dispatched as a backup unit to a carjacking that

---

[7] Later in the deposition, Officer Pringle testified that the driver fled in a southerly direction and the passenger ran in a northerly direction. Id. at 33.

had just occurred." Id. at 7. As he approached the Westminster apartment complex, there was a police radio broadcast, describing the suspect and his direction of travel. Id. at 9. At this time, he observed a black male come out from behind a closed business north of the apartment complex, "which was the direction that the supposed suspect was traveling." Id. at 11. At the deposition, Officer Delano did not recall what the suspect was wearing. Id. at 12.

Officer Delano called out to the suspect over the police car's public address system, and the suspect stopped. Id. at 14. Officer Delano got out of his vehicle, conducted a "pat-down for weapons," did not find any weapons, and then placed the suspect in the back of the police car. Id. at 14. He called the other officers at the scene, informed them that he had a suspect and transported the suspect to the scene. Id. at 15.

At the pretrial hearing on the motion to suppress, Mr. Desmond Winkfield testified that he reported the robbery and carjacking to the police and gave a description of the suspect who robbed him and stole his car. Ex. A at 146. He reported that the suspect was wearing either khaki, tan or beige pants and a beige, green and black shirt. Id. At the time he made the report, he described the suspect's height and weight, but at the hearing he was unable to recall the height or weight. Id. at 146-47. However, on cross-examination, he agreed that he told the police the suspect was between five feet, nine and five feet ten inches tall.[8] He also reported that the robber was a black male. Id.

---

[8] This portion of the transcript is contained on an unnumbered page between pages 161 and 162 of Ex. A.

11

At the August 20, 2004 evidentiary hearing on Petitioner's 3.850 motion, Mr. George testified that on March 28, 2000, he filed a pretrial motion to suppress the in-court and out-of-court identifications of Petitioner on the basis that the pretrial identification procedure was impermissibly suggestive. Ex. H at 134. Mr. George stated that, during the trial, he raised the issue of the lack of reasonable suspicion to initially stop the Petitioner. Id. at 135. When asked why he waited until trial to litigate the reasonable suspicion issue, Mr. George replied, "I thought the issue as to the suggestive nature of the identification was our strongest motion. As it pertained to the reasonableness of the stop, that was kind of an iffy thing, and I figured that I'd better -- I was better off at trial." Id.[9] Mr. George testified that he reviewed the dispatch tape that included the description of the suspect when he evaluated the legality of the initial stop. Id.

This Court has also listened to the dispatch tape, and notes that many portions of the tape are inaudible and/or incomprehensible to anyone who is not familiar with police radio codes. The portion of the dispatch tape that was played for the jury at trial reflects that Officer Delano reported the following, "I've got a black male (inaudible) coming out of the complex, if anybody has a description. He's got on tan pants and a green and white plaid shirt, and he's been running through some briers." Ex. B at 289. Shortly thereafter, the tape reflects that Officer Delano asked Officer Pringle, "would you 1022 the description of the guy I picked up? I don't know if you missed it. He's the one that had the plaid shirt, tan pants, early -- about 18, 19." Id. at 290. Officer Pringle responded as follows: "The only thing I can

---

[9] See footnote 6, supra.

tell you is he had on some dark jeans. He had on a white T-shirt, and there was something written on the back of it, and I think his hat was black or blue turned backwards. That's all I could see." Id. at 291.

In light of the above-described information that Mr. George had available to him prior to trial,[10] this Court finds that his decision to not pursue the reasonableness of the initial stop and the alleged lack of probable cause for the arrest was not objectively unreasonable. Mr. George could have reasonably believed that the trial court would not rule favorably on this issue if the two officers testified at the suppression hearing in accordance with their deposition testimony. Additionally, as noted previously, portions of the dispatch tape are inaudible. Thus, despite the fact that the dispatch tape does not reflect that the driver of the pink Acura was described as wearing a plaid shirt and tan pants, it is possible the trial judge would have believed the testimony of Officer Pringle that he broadcast such a description. If the trial court did so, Florida case law would have supported a denial of a motion to suppress on this basis. See Cole v. State, 701 So.2d 845, 855 (Fla. 1997) (per curiam), cert. denied, 523 U.S. 1051 (1998).

The pertinent portion of the Cole case states:

---

[10] The Court notes that the trial testimony of Officers Pringle and Delano was somewhat different from their deposition testimony and would have been much more supportive of a motion to suppress on the basis of an illegal stop and/or arrest. However, "[b]ecause 'it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight,' Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 1854, 152 L.Ed.2d 914 (2002), [this Court] must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' Strickland, 466 U.S. at 689, 104 S.Ct. at 2065." Lawhorn v. Allen, 519 F.3d 1272, 1294 (11th Cir. 2008).

> The standard for determining whether a law enforcement officer has probable cause to make a legal arrest is whether the officer has reasonable grounds to believe that the person has committed a felony. Blanco v. State, 452 So.2d 520, 523 (Fla. 1984). When reviewing a trial court's determination of a motion to suppress, an appellate court will look to all of the surrounding facts and circumstances in the light most favorable to sustaining the lower court's ruling. Terry v. State, 668 So.2d 954, 958 (Fla. 1996). In this case, officers had a detailed physical description of Cole and Paul, their clothing, and the crime. As detailed above, when the police were informed that the two were in the area near where the stolen car was found, they located the two and personally observed that the two fit Pam's physical description. Based on these circumstances, we affirm the trial court's order denying the motion to suppress. See State v. Hester, 545 So.2d 493, 494 (Fla. 3d DCA 1989); cf. Carroll v. State, 636 So.2d 1316, 1317-18 (Fla. 1994) (police had reasonable suspicion to detain suspect who was seen walking on deserted highway near victim's abandoned truck).

Id.

Reviewing the issue from the perspective of Mr. George at the time he filed and argued the motion to suppress, this Court cannot say that his decision to not pursue this issue was objectively unreasonable because he thought that: (1) Petitioner's clothes matched the description of the driver allegedly provided to the police by one of the victims; (2) Officer Pringle testified that he broadcast this same description over the police radio; (3) Officer Delano testified that he received a broadcast describing the suspect and his direction of travel; and (4) shortly thereafter he saw a black male coming from the direction of the apartment complex from which the suspect fled. Thus, Mr. George could have reasonably believed that a motion to suppress on the basis of an illegal stop or arrest would not have been fruitful.

14

This is not a case where Mr. George failed to recognize or investigate this issue. Mr. George deposed the two officers and listened to the dispatch tape. After doing so, he made a tactical decision to pursue what he believed to be the strongest basis for suppressing the identifications (arguing that the show-up identification procedure was impermissibly suggestive). As noted previously, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

> In deciding whether trial counsel performed deficiently, courts are to review his actions in a "highly deferential" manner and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. To overcome Strickland's presumption of reasonableness, [Petitioner] must show that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc); Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1209 (11th Cir. 2007) ("Based on this strong presumption of competent assistance, the petitioner's burden of persuasion is a heavy one: 'petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" (quoting Chandler)).

Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (footnote omitted).

While, in hindsight, it might have been a good idea for defense counsel to assert the "probable cause" issue with more vigor, this Court cannot conclude that no competent counsel would have taken the action that Mr. George took with respect to the suppression issue. Furthermore, "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard" Petitioner's ineffective assistance of trial claim must fail. Knowles, 129 S.Ct. at 1420. Accordingly, for all of the above-stated

reasons, the Petition will be denied, and this case will be dismissed with prejudice. However, the Court will grant a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

4. If Petitioner appeals this denial of the Petition, the Court grants a certificate of appealability with respect to the following issue: whether this Court erred in deferring to the state court's decision to deny Petitioner's claim that he was denied the effective assistance of counsel when counsel failed to raise and argue a dispositive illegal detention issue.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of February, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

ps 2/23
c:
Counsel of Record